IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **DAVIS SOLOMON** | * | **CIVIL ACTION NO. 06-1873** |
| **VERSUS** | * | **JUDGE HICKS** |
| **HARTFORD LIFE & ACCIDENT INSURANCE COMPANY** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an Employment Retirement Income Security Act ("ERISA") claim filed by Plaintiff Davis Solomon. Defendant Hartford Life & Accident Insurance Company ("Hartford") has opposed the claim. For the reasons stated below, it is recommended that this case be **DISMISSED WITHOUT PREJUDICE**. In addition, **IT IS RECOMMENDED** that both parties' motions for attorney fees be **DENIED**.

## STATEMENT OF THE FACTS

This action arises from Hartford's decision to decrease the Long Term Disability (LTD) benefits that Solomon receives as part of a group health insurance plan (the "Plan") governed by ERISA (29 U.S.C. § 1001, *et seq*). Solomon became unable to continue working for Aeropres Corporation on July 4, 2003, according to his Application for LTD Benefits. H00746-49.[1] Solomon had been diagnosed with Sarcoidosis, Diabetes Mellitus, and Renal Insufficiency. H00750-51. Hartford approved Solomon's claim for LTD Benefits effective October 2, 2003. H00623-25.

---

[1] The administrative record will be cited by the page number in this manner (the record runs from H00001-H00789).

Originally, Solomon's monthly LTD benefit was $2,287.60. Effective June 1, 2005, Hartford reduced the monthly benefit to $466.66, asserting that $1,908 was being deducted to recoup a previous overpayment. H00131-32. The overpayment had resulted from Solomon's receipt of a retroactive award of Social Security Disability (SSD) benefits.

Hartford discovered the overpayment in May 2005, when it received a copy of a Notice of Award from the Social Security Administration (the "SS Award") to Solomon. H00260-65. The SS Award stated that Solomon was "entitled to monthly disability benefits beginning January 2005." In a letter dated June 7, 2005, Hartford informed Solomon that his LTD claim had been overpaid by $8,268.00, as a result of the retroactive award. H00131-32. In that letter and in several subsequent correspondences, Hartford requested reimbursement from Solomon. After receiving no reimbursement, Hartford reduced Solomon's monthly benefits to recoup the overpayment.

Solomon retained counsel in an effort to reinstate his full monthly benefits. In response to letters received from Solomon's attorney, Hartford explained the basis for the reduction and informed Solomon that ERISA gave him the right to appeal the decision. H00100-01. Before filing suit, Solomon's attorney responded to Hartford, stating that "we have already appealed the original decision in this matter and feel that all administrative remedies have been exhausted." H00094.

LAW AND ANALYSIS

**I      ERISA Governs The Employee Benefit Plan At Issue**

Solomon, while conceding that ERISA governs the Plan, contends that the question presented to this Court is not an "ERISA matter." This contention is inapposite. According to Fifth Circuit precedent, courts merely need to determine whether ERISA governs the benefits

plan at issue (i.e., it is not the case that certain disputes pertaining to such plans are not "ERISA matters"). *See e.g. House v. Am. United Life Ins. Co.*, No. 06-30168, 2007 U.S. App. LEXIS 21167, at *7 (5th Cir. Sep. 4, 2007) ("We are presented with the threshold question of whether House's disability policy is a benefit plan regulated by ERISA."); *see generally Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950 (5th Cir. 1995) (explaining that application of the exhaustion requirement "presuppose[s] that the grievance upon which the lawsuit is based arises from some action of a plan covered by ERISA."). Solomon offers no basis for his argument to the contrary. Hence, federal law - in the form of ERISA and ERISA-related caselaw - controls this inquiry.

## II     Failure To Exhaust Administrative Remedies

Hartford seeks dismissal of the case in light of the fact that Solomon has failed to exhaust all available administrative remedies. ERISA requires that employee benefit plans provide administrative remedies for persons whose claims for benefits have been denied. 29 U.S.C.A. § 1133. Moreover, the Fifth Circuit has held that any claim for benefits under a plan governed by ERISA must be preceded by an exhaustion of the administrative remedies. *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir. 1997) (citing *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295 (5th Cir.1985)). "This requirement is not one specifically required by ERISA, but has been uniformly imposed by the courts in keeping with Congress' intent in enacting ERISA." *Hall*, 105 F.3d at 231.

The Plan in question requires participants to file an administrative appeal within 180 days of being notified that a claim has been denied:[2]

---

[2] In this case, Solomon's claim for benefits, arguably, was not denied – rather, it was decreased. This distinction, however, does not relieve the exhaustion requirement. *See Cooperative Benefit Administration, Inc. v. Ogden*, 367 F.3d 323, 336 (5th Cir. 2004) (affirming, in a case with similar facts, the district court's holding that the

>    **What recourse do you have if your claim is denied?**
>
>    On any claim, you or your representative may appeal to us for a full and fair review. You may:
>
>    1.  request a review upon written application within 180 days of the claim denial;
>
>    2.  request copies of all documents, records, and other information relevant to your claim; and
>
>    3.  submit written comments, documents, records and other information relating to your claim.

H00015.

In response, Solomon asserts that he did follow the claims appeal procedure. However, Solomon provides no support for this assertion. Solomon has neither cited to the administrative record nor elaborated on the method by which he appealed. Based on the Court's inspection of the record, the only potential basis for Solomon's assertion is three letters from Plaintiff's counsel to Hartford; they are dated January 19, 2006 (H00129-30); July 10, 2006 (H00100-01); and August 2, 2006 (H00098). Each of the letters was mailed beyond the 180 day time-frame required by the Plan, since Hartford informed Solomon of the reduction by letter on June 7, 2005. H00131-32.

Even assuming *arguendo* that one or more of the letters arrived within the time-frame required by the Plan, none of the letters constitute the requisite written application for appeal. Not once within the letters does Solomon specifically request an appeal; instead the letters either seek clarification, demand payment, or suggest an error on the part of Hartford. Moreover, in response to the last of the three letters, Hartford sent a letter to Solomon's attorney specifically stating that Solomon had the right to appeal Hartford's decision,. indicating that Hartford did not view any of the letters as an appeal. H00100-01. Furthermore, this Court's finding (that the

---

claimant had failed to exhaust administrative remedies).

letters do not constitute an appeal under the Plan) is consistent with the rulings of other courts in this circuit. *See Pierce v. United Rentals, Inc.*, No. 3:01-CV-0995-K, 2003 U.S. Dist. LEXIS 14901 at *7-9 (N.D.Tex. Aug 28, 2003) (holding that a demand letter that did not request an appeal did not constitute an appeal); *Tilton v. Wal-Mart Stores, Inc.*, No. 98-2801, 1999 U.S. Dist. LEXIS 7444 at *5-6 (E.D.La. May 13, 1999) (holding that a demand letter that did not request an appeal did not constitute an appeal).

Since Solomon filed no appeal – within 180 days of Hartford's decision or otherwise – it is recommended that the case be dismissed for failure to exhaust administrative remedies. However, as will be discussed, even if Solomon had exhausted the available remedies, it appears based on the present record that the suit would fail on its merits.

**III**   **Hartford Did Not Abuse Its Discretion**

   **A. Standard of Review**

In cases such as this one, "where an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits and to construe terms, courts may not reverse the administrator's benefits determinations absent an abuse of discretion." *High v. E-Systems, Inc.*, 459 F.3d 573, 577 (5th Cir. 2006) (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999). Hence, this Court is limited to a review of Hartford's constructions for abuse of discretion, or, in other words, whether the constructions are arbitrary and capricious. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 599-601 (5th Cir. 1999). Under an arbitrary and capricious standard, Hartford's decision must be affirmed if it is supported by substantial evidence. *Meditrust Fin. Servs Corp. v. The Sterling Chems, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Id.* at 215 (quoting *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir. 1996) *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828-29 (5th Cir. 1996)). Eligibility for benefits under an ERISA plan is governed by the plain meaning of the plan's language. *See Threadgill v. Prudential Secs. Group, Inc.*, 145 F.3d 286, 292 (5th Cir. 1998).

### B. Hartford's Decision to Reduce Solomon's LTD Benefit

The administrator decision to be evaluated by this Court is Hartford's decision to reduce Solomon's LTD benefits in light of the fact that Solomon had been awarded SSD benefits. As a preliminary matter it is worth noting that, as a matter of law, ERISA plans may reduce LTD benefits by offsetting SSD benefits under the Social Security Act. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 514-15 (1981) ("Congress did not prohibit 'integration,' a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees . . . Congress expressly preserved the option of pension fund integration with benefits available under . . . the Social Security Act."); *see Nesom v. Brown & Root, Inc.*, 987 F.2d 1188, 1193 (5th Cir. 1993) (citing *Alessi*, 451 U.S. at 521) (holding that *Alessi* applied to integration of long term disability benefits plans as well) .

Solomon contends, however, that "subtracting benefits received . . . from the Social Security Administration . . . is not allowed by the policy in question."[3] As a result, this Court must determine whether there is substantial evidence that Hartford's decision is consistent with the text of the Plan. Hence, this Court must determine whether the plain meaning of the Plan's text supports a decision to decrease an LTD benefit to offset an overpayment caused by a retroactive award of SSD benefits.

---

[3] While Solomon contests the permissibility of the offset under the Plan, Solomon does not contend that Hartford erred in its calculation of the offset. Consequently, this Court shall not consider whether the LTD benefits were calculated correctly.

There is ample supporting evidence to be found in the administrative record that indicates an answer in the affirmative. Specifically, this Court relies on the Certificate of Insurance ("Certificate") (H00001-49), which contains the rules and provisions of the Plan; the SS Award (H00260-65); and several letters between the parties. Since the Certificate contains the text of the Plan, the vast majority of the evidence that supports Hartford's decision is found therein.

For example, the Certificate contains a section designated "Calculation of Monthly Benefit":

> If you are Disabled and not receiving benefits under the Return to Work Incentive, we will calculate your Monthly Benefit as follows:
>
> 1. multiply your Monthly Income Loss by the Benefit Percentage;
> 2. compare the result with the Maximum Benefit; and
> 3. **from the lesser amount, deduct Other Income Benefits.**

H00009 (emphasis added). Also in the Certificate, the phrase "Other Income Benefits," used in the monthly benefit calculation, is defined as follows:

> **Other Income Benefits** mean the amount of any benefit for loss of income, provided to you or to your family, as a result of the period of Disability for which you are claiming benefits under this plan. This includes...
>
> 6. disability benefits under:
>
>     a. the **United States Social Security Act** or alternative plan offered by a state or municipal government... that you, your spouse and children are eligible to receive because of your Disability... [emphasis added]
>
> If you are paid Other Income Benefits in a lump sum or settlement, you must provide proof satisfactory to us of:
>
> 1. the amount attributed to loss of income; and
> 2. the period of time covered by the lump sum or settlement.
>
> We will pro-rate the lump sum or settlement over this period of time. If you cannot or do not provide this information, we will assume the entire sum to be for loss of income, and the time period to be 24 months. We may make a retroactive allocation of any retroactive Other Income Benefit. A retroactive allocation may result in an overpayment of your claim. Please see the provision entitled, What happens if benefits are overpaid?

H00018-19.  In this case, there is substantial evidence that Solomon received a retroactive award of SSD benefits as described in the "Other Income Benefits" section.  Specifically, the SS Award, dated May 2005, states that Solomon became entitled to monthly disability benefits beginning January 2005 and that he had "past-due benefits" for the four months preceding the letter.  H00260-65.  Since Solomon received SSD benefits, which are listed in the "Other Income Benefits" section, there is substantial evidence that Hartford overpaid Solomon.

Finally, the Certificate contains a section entitled "**What happens if benefits are overpaid?**" that describes the manner in which Hartford may alter future benefits to recover a past overpayment:

> An overpayment occurs when it is determined that the total amount we have paid in benefits is more than the amount that was due to you under the plan.  This includes, but is not limited to, overpayments resulting from:
>
> 1. retroactive awards of Other Income Benefits;
> 2. failure to report, or late notification to us of Other Income Benefits or earned income;
> 3. misstatement; or
> 4. an error we may make
>
> We have the right to recover from you any amount that is an overpayment of benefits under this plan. You must refund to us the overpaid amount. **We may also**, without forfeiting our right to collect an overpayment through any means legally available to us, **recover all or any portion of an overpayment by reducing or withholding future benefit payments**, including the Minimum Monthly Benefit.

H00016 (final emphasis added).  In sum, the Certificate states that monthly benefits may be reduced due to overpayment caused by receipt of a retroactive award of SSD benefits.

Based on the evidence detailed above, it is clear to this Court that the Plan provides for the contingency of a claimant receiving overpayment from an "Other Income Benefit" such as SSD benefits.  The Plan specifically allows, in that circumstance, a reduction of future LTD benefits.  Consequently, this Court holds that Hartford did not abuse its discretion.

**III    Attorney Fees**

Both parties argue that they are entitled to recover attorney fees. ERISA provides that courts may use their discretion to allow reasonable attorney fees and costs of the action to either party. 29 U.S.C.A. § 1132(g). The Fifth Circuit has provided the following guidance on the issue:

> In deciding whether to award attorneys' fees to a party under section 502(g) . . . a court should consider such factors as the following:
>
> (1) the degree of the opposing parties' culpability or bad faith;
>
> (2) the ability of the opposing parties to satisfy an award of attorneys' fees;
>
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
>
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
>
> (5) the relative merits of the parties' positions.
>
> No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g).

*Iron Workers Local # 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980) (citations omitted). In this case, factors (1), (3), and (4) do not weigh in favor of either party. In addition, the facts supporting factors (2) and (5) are insufficient to merit an award of attorney fees. Consequently, this Court holds that an award of attorney fees is inappropriate in this case.

For the aforementioned reasons **IT IS RECOMMENDED** that this case be **DISMISSED WITHOUT PREJUDICE**. In addition, **IT IS RECOMMENDED** that both parties' motions for attorney fees be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of September, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE